The Chancellor.
The objections, on the part of the plaintiff in error, to the judgment, may be included in the two following, viz.:
1. That no action will lie against an overseer of the highways, at the suit of any private individual, for not repairing a public bridge.
2. If such action can be sustained, in any case, yet that, in this' case, no cause of action is stated in the declaration, and it is bad after verdict.
Though the sum in controversy is small, yet the principle *351 involved in the case is important, and may deeply affect every part of the community.
1. I have examined the act to regulate highways, (sess. 36. eh. 33. 1 Rev. Stat. 501. 505.) to discover the power and duty of the overseer, and the responsibility to which he maybe subjected.
The 1st section makes it the duty of the commissioners of highways to give directions relative to the repairing of the roads and bridges within their respective towns, and to cause to be kept in repair the highways and bridges, and to require the overseers, as often as they shall deem necessary, to warn the assessed to work on highways, to come and work thereon, with such implements, carriages, cattle, and sleds, as the commissioners shall direct.
The 3d section makes it the duty of the overseers of highways to repair and keep in order the highways, within their road districts, to warn all persons assessed, to come and work when required by the commissioners, to collect all fines %nd commutation money, and to execute all such orders of the commissioners of the town as shall be given by them in conformity to law.
From these two sections, it would seem, that the overseer is a mere, subordinate agent to execute the orders of the commissioners of highways, and that his duty, so far, consists principally in warning persons to work, and in collecting fines and commutation money. It is, indeed, said to be the duty of the overseers to repair and keep in order the highways, but the first section had already made it the duty of the commissioners to give directions relative to the repairing of roads and bridges, and to cause the highways and bridges to be kept in repair. It cannot have been intended to be the equal and concurrent duty of the commissioners and the overseers to do the same thing; for their orders and acts might interfere and come in collision with each other. All the powers of the overseers must, therefore, be taken to be subordinate to, and under the superior control of, the orders of the commissioners, whom they are bound to obey. It is further to be observed, that the duty of the overseers in these two sections is confined to the highways, and it is the commissioners alone who are directed to keep in repair bridges as well as highways. The overseers have no concern with bridges erected over streams, except so far as they are directed generally to execute the orders of the commissioners.
The 5th section directs the overseers to deliver to the commissioners lists of the persons in their road districts, liable to work on the highways, and the commissioners are to assess the number of days each man is to work, and return the lists to the overseers. And if the assessment should not be sufficient, the overseers are then authorized, in the 6th section, to make another assessment.
*352 The 8th section directs commutation money to be paid to the overseer; and the 9th section provides, that the overseer shall make complaint to a justice of all persons who shall not, without due excuse, work according to notice ; and the fines to be collected for such defaults are to be paid to the overseer, and this commutation money, and these fines, *the overseer is to expend in improving the roads and bridges in his district.
This is the only part of the act which gives the overseer any power or direction as to bridges. He is to expend the commutation money and fines which came into his hands, on the roads and bridges; and even this expenditure must, no doubt, be under the direction of the commissioners, who are specially charged with that duty; and they may, by the 11th section, direct this money to another object, by directing the overseers to buy an iron scraper for the use of the road district. Again; by the 13th section, the overseers are annually to account to the commissioners, of the persons who have worked, and the number of days, and of those who have commuted or been fined, and of the manner in which the fines and commutation money have been expended, and they are directed to pay the unexpended moneys over to the commissioners, who are to apply it in making and improving the roads and bridges. The overseers are liable to a penalty of five dollars for neglecting to account, and by the 14th section, they are liable to a penalty of ten dollars, for every neglect of duty under the act. The commissioners recover these penalties, and are to apply them in making and improving the roads and bridges in the town.
Here, again, the commissioners, are to apply the moneys on the roads and bridges; and it is a fact well worthy of notice, that whenever the repairing of bridges is mentioned in the act, it is always in reference to the duty of the commissioners, except in the single case of moneys arising from fines and commutation. From the general provisions, and the whole policy of the act, there seems to be no doubt, that even those moneys are to be expended on the roads and bridges tinder the orders of the commissioners. The superintendence and control of the overseers, as well as the general charge and duty of repairing bridges, rest with the commissioners. Thus, also, by the 31sf section, the commissioners are to account annually to the supervisors for all the moneys received from fines and commutations, or otherwise, and to report the improvements which have been made, or which are necessary to be made, on the roads and bridges; and the moneys which the board of supor-visors shall #direct to be raised in any town for those purposes, are to be paid to the overseers of highways on the order of the commissioners. And again ; in the 33d section, if the erection or repair of a bridge becomes an unreasonable burthen on any town, the supervisors are to raise a requisite sum from the county, to be paid over to the commissioners of the town.
*353 In short, it appears, from a careful examination of the several provisions of the act, that the commissioners, and not the overseers, of highways, are the responsible persons in respect to the erection or repair of bridges. The overseers have nothing to do with bridges, but in the single instance in which they receive fines and commutation money, or other money, under the order of the commissioners. In every other part of the act, the duty of repairing bridges and expending money for that purpose, is expressly vested in the commissioners. The overseers were intended to be chiefly confined to highways. They are to warn the people to work with their implements and teams on the highways. The construction or repair of bridges is a distinct business. It is an act in which the people summoned to work with their implements and teams, are not supposed to be skilled. Bridges cannot be made or repaired without money to purchase materials, as timber, plank, and iron ; and when the act speaks of the application of money, it is uniformly to roads and bridges. The overseers are under the orders of the commissioners, even in the very section in which it is declared to be their duty to repair the highways: and they are subject to a penalty for neglecting or refusing to do any service under the act enjoined on them by the commissioners; and who are even to supply vacancies among the overseers occasioned by death or otherwise.
My conclusion, from this analysis of the act, is, that with respect to bridges, at least, if not to highways, the commissioners. and not the overseers, are the persons properly responsible to the public. With respect to bridges, the duty of the overseers (if any duty they have on that subject, independent of the orders of the commissioners) is to apply the moneys they may receive from commutation and fines (when not directed otherwise) in improving the roads and %ridges. It is not bridges alone, but roads and bridges; and how much shall be applied to each distinct object, or whether all to one, and none- to the other, must rest in the judgment and discretion of the overseer.
Such a limited and precarious duty in the reparation of bridges cannot, as I apprehend, afford ground for a private action against the overseer, from any and every person who may happen to be injured by a bad bridge within his district.
When the law renders a public officer liable to special dam ages for neglect of duty, the cases are those in which the services of the officer are not uncompensated or coerced, but voluntary and attended with compensation, and where the duty to be performed is entire, absolute, and perfect. Here is no absolute duty in the overseer to repair bridges. The most that can be said is, that if he should happen to have money in his possession, arising from such an accidental source as fines and commutation, and the commissioners shall not have di *354 rected otherwise, that then he may apply it in improving the r°ads and bridges. The duty is. at all events, very imperfect, and depending on contingencies for its creation, and resting muc^ on discretion in its performance. The record, in this case, does not inform us what particular bridge was out of repair, nor what expense was requisite to improve it. It only says, that a certain bridge, in the town of Salem, was “ broken and shattered.” It may have been one of the bridges over the Batten Kill, a large, and, at times, a very impetuous stream, and we can hardly suppose a case under the statute, in which the overseer of a road district was under such a clear and certain duty to repair a broken and shattered bridge over such a stream, as to be legally chargeable with all damagi - to any amount, that travellers might sustain by reason of the bridge.
Another reason why the repair of bridges must and ought to belong to the commissioners, is, that each overseer is confined to his own district, and these districts are created by the commissioners, and they alone can appropriate the moneys arising under the act in such a manner, as to render the bur-then of repairing the bridges fair and equal upon all the inhabitants of the town.
#If a private suit will lie in any case, for the recovery of damages occasioned by a broken bridge, I should suppose that the commissioners of highways are the only persons to be sued. Their duty is to give directions relative to the repairing of the roads anal bridges, and to cause to be kept in repair the highways and bridges. This seems to be a general duty applicable at all times, and in all places; yet, when we come to read the details of their duty, we perceive that it does not exist absolutely, but arises only when the commissioners have money in hand, from forfeitures and penalties, or which has been paid over to them under the direction of the supervisors. Except in one case, the commissioners have a discretion to apply the money upon the roads and bridges ; their duty does not go further than to the expenditure of those particular moneys, and they may expend it upon the roads and bridges, or upon either of them, as they shall deem best. The only case in which money is to be exclusively applied to bridges, is when the supervisors raise, money on the county at large, for some particular bridge or bridges, and then the appropriation must be specifically applied to such bridge. And though the question, whether the commissioners might not be liable to a private suit, is not now before us, I should rather be inclined to think, that the objection to such a suit applies to them as well as to the overseers. There is no certain, stable, absolute duty in the case. It is not like the case of an individual bound by a private statute, or by a certain tenure, to keep a road or bridge in repair, nor like the case of turnpike companies. There, the duty is perfect, and binding *355 at all times, and is founded on a valuable consideration. The roads and bridges must, at all events, be kept in repair, according to ordinary diligence. It is a condition of the grant. The duty is not casual or contingent, but inevitable. In the case, however, of these commissioners and overseers, the duty depends upon a train of circumstances ; it is very indefinite, and is varied and regulated by their discretion. There is not that precision and certainty of duty, that ought to make them responsible to individuals to any extent, and for any damage. The law has not supplied them with the pecuniary means, or armed #them with the coercive power requisite to meet and sustain such an enormous and dangerous responsibility.
The argument to be drawn from the English law, on this subject, is very strong against the right of action. There are officers, under the English law, equally as under ours, charged with repairing the roads and bridges ; they have existed, and been known from ancient times, and yet there is no case in the English books, nor any precedent under our colony government, of any such private action ; this affords a very strong presumption, that no such action will lie.
No man at common law, says Lord Coke, (2 Inst. 701.) was bound to repair a bridge, unless he was charged with that duty under some condition of tenure or prescription. The duty of repairing bridges belonged to the county ; and the remedy at common law, for not repairing a public bridge, was by presentment or indictment, in order to avoid multiplicity of suits. (2 Inst. 701. Cro. Car. 365. Com. Dig, tit. Chemin. B. 3. 2 Black. Rep. 685. Andrew’s Rep. 101. 285.) The first English statute on the subject is the 22 II VIII. c. 5., by which the general sessions of the peace were authorized to inquire into, hear, and determine, all annoyances of bridges broken, and to inflict pains on such as were charged to make and mend the bridges ; and this remedy the sessions were to apply, as the K. B. had been used to do. The statute further provided, that if a bridge was within any city or corporate town, the inhabitants thereof should make and repair it; and if not, that then the inhabitants of the shire or county should do it; and the inhabitants were to be assessed by the sessions, for money necessary to make or repair the bridges; and the sessions were to appoint two surveyors to receive the money, and see that the bridges were repaired, and to account to the sessions.
Here we find, as early as the time of king II VIII., officers appointed, analogous to our commissioners or overseers of highways, whose duty it was made to receive moneys and repair the bridges : and yet there is no trace of any private action having ever been brought against these surveyors. It was made a question, at Sergeant’s Inn, long after this act #of II. VIII., who ought to repair bridges and highways, and how they should be compelled; and it was held, that as to bridges, the county was chargeable with the reparation of them, and that *356 the statute of 22 II VIII. was but an affirmance of the common ^aw 011 that point: but it was observed, that if a person was entitled to take toll for passing the bridge, he was bound to repair it, for he had the toll for that purpose, et qui sentit com-moaum, senlire debet et onus, bo, a man, or a corporation, might be bound to repair a bridge, by reason of some tenure or condition in their grant of land ; or if it was a private road over which B. had a passage, B. might have his writ de ponte reparando. But, except in such special cases, it was a county burden, both as to bridges and highways, and the remedy was not by suit against the surveyor or justices, but by presentment or indictment against the county, or against some individuals thereof, for and in the name of all the rest, (2 Inst. 701. Popham, 192, 13 Co. 37. s. 7.) .
The next English statute on the subject, was the 2 and 3 P. &f M. ch. 8. which related to highways only, and directed the constables and churchwardens of each parish to call the inhabitants together annually, to choose in each parish, two surveyors and orderers for mending highways, who were bound to assume the trust, under a penalty of twenty shillings, and who were to direct and order the persons to be appointed to work on certain days, to be named by the constables and churchwardens. The statute then directs the mode and manner of the work, and prescribes penalties for default, and the moneys arising from fines and forfeitures, were to be bestowed upon the highways.
This statute contains the outline and substance of our own act; and yet no private suit was ever brought against these surveyors and orderers, for damages arising from neglect of duty.
The statute of 1 Ann. 1. c. 18. continued the act of 22 II. VIII. with some alterations, and, among other things, it directed the general sessions of the peace to appoint treasurers to receive and apply, under their direction, the moneys assessed and collected for repairing bridges ; and *all fines and forfeitures were to be appropriated for the same purpose.
The statute of 13 Geo. III. c. 78. reduced all the former laws on the subject of highways into one act, and by it the sessions were to appoint a surveyor of highways for each parish with a salary, and ample superintending powers relative to the highways. The system of English law on the subject now is, that the care of repairing the roads belongs to each parish, and that of bridges devolves upon the county, unless the county or parish can throw the onus on some individual, by reason of tenure or prescription. But neither the surveyors, in respect to highways, nor the surveyors or treasurers, in respect to bridges, are held responsible to individuals for the damages which they may sustain by means of the bad or decayed state of the roads or bridges. The remedy, in both cases, is by indictment at the suit of the king, or for the penalty prescribed *357 by the statutes; and I apprehend that no good reason can be assigned why the overseer or commissioner should be liable to a private suit under our act, or at common law. and yet that the surveyor of highways, under the English laws, who is charged with a similar duty, should not be liable. The same rules or principles of law are applicable to both cases.
In the case of Russell v. The Men of Devon, (2 Term Rep. 667.) an attempt was lately made in England to recover, in a private suit, damages suffered in consequence of a bridge being out of repair, and the attempt was to charge two of the inhabitants of a county in behalf of all the rest. But it was held by the K. B., that no civil action lay against the inhabitants of a county for an individual injury, in consequence of a breach of their public duty. The county was not a corporation for that purpose, and had no corporate fund. The court referred to the case of 5 Edw. IV. fo. 3. mentioned in Bro. tit. Action sur le Case, pi. 93. as being good law, in which it was held, that if a highway be out of repair, so that a horse be mired and injured, no action lies by the owner against him who ought to repair it, for it is a public matter, and ought to be reformed by presentment. This case, then, is an authority equally to show, that no private suit will lie in a case of a broken bridge, *which is to be repaired by the county, or of a bad road, which is to be repaired by the parish. And when the judges admitted that an action would lie by one individual, for an injury sustained by neglect or default, against any other individual who was bound to repair a bridge, they certainly did not allude to the surveyor, or other public officer entrusted with that duty. They must have alluded to such cases as those mentioned by Lord Colee, in which an individual, or a corporation, may be bound to repair a private bridge, or a public bridge, by reason of tenure or prescription, or the grant of the toll.
We have every reason to presume, that our legislature did not intend to charge the officers, entrusted with the superintendence and repair of the public roads and bridges, with any greater responsibility, by private suit, than the penalty given against overseers for neglect of duty. If that had been their intention, and if they had meant to introduce a new rule on the subject, I think the law would and ought to have been explicit. To sustain añ action, at this day, against all former practice, is taking these officers by surprise. We have had our commissioners and overseers of highways, from the first settlement of the colony; and the weight and responsibility of the trust must have been understood and settled in public opinion, according to the English law. In 1691, the freeholders of each town were directed, by statute, to choose annually surveyors and ordcrers of the work for amending highways. The very names of the officers, we perceive, were borrowed from the statute of Philip & Mary. Afterwards, *358 there were colony road acts for almost every county. Thus, by an act in 1732, the inhabitants of Suffolk county were to mend their highways, under the orders and directions of the commissioners or overseers of highways; and, by acts, in 1744, and 1745, and 1750, each town in the other counties, in the southern district, together with Dutchess, Orange, and Albany, were to keep the roads in repair, and the commissioners were to direct the overseers to warn the people to work; and if the overseers thus neglected to see the roads and bridges mended, they were liable, for every neglect, to a penalty of 40 shillings, which was to be applied towards repairing *the same. Under this colonial usage, founded on the English statutes, we derive our present code of highway regulations; and it differs from the English in this particular, that with them, the care of bridges belongs to the county, but with us, it belongs to each town, subject, however, to county aid. when •the burthen on the town might be too great.
My conclusion, therefore, is, that the only private action against the overseers, is the one given by the act, which is for the penalty of ¾⅜ 10, arising on every breach of duty, and which may be repeated, again and again, for every neglect. But it is with some distrust and reluctance that I have arrived at this conclusion, inasmuch as I am obliged to differ from the opinion of a tribunal, for which I entertain the most entire respect.
2. But, if I am mistaken on this point, and it should be considered by this court, that an action will lie, in certain cases, by an individual against an overseer of the highways, for not repairing a bridge, then 1 am of opinion, on the second point, that the declaration in the case does not set forth a sufficient cause of action ; and it is a defect which is not cured by verdict, but is bad upon a writ of error.
The duties of the overseer are all created and prescribed by the act regulating highways, and if an action will lie, it must be founded upon a breach of the duties there enjoined. The declaration ought to have stated specially the cause of action arising under the statute. It ought to have stated specially every fact requisite to enable the court to judge whether there has been a breach of duty. This appears to be a sound and well settled rule of pleading in actions founded upon statute. (Com. Dig. tit. Action upon Statute, G. If A. 3. Com. Dig. tit. Pleader, C. 76. 4 Johns. Rep 193. Cole v. Smith. 1 Johns. Hep. 402. Morrell v. Fuller. 8 Johns. Rep. 218. S. C. 8 Johns. Rep. 342. Newcomb v. Butterfield.)
The declaration in this case states, generally, that the overseer neglected his duty, and wilfully suffered a bridge to remain broken, by means of which the plaintiff sustained an injury. This was not enough. There is no special duty charged, nor are the facts stated from which a breach of *duty is to be inferred. The mere fact, that the defendant was an overseer of highways, and that a bridge within his road district was out " *359 of repair, gives no right of action. If the overseer had no money, arising either from fines or commutation, and no order, or if he had a contrary order, in respect to the bridge, from the commissioners, he was not guilty of a breach of duty, though he did wilfully suffer the bridge to remain out of repair. He was under no obligation, simply because he was overseer, to repair the bridge. Ííis obligation, if any, arose from the means which he had in his power, and from which alone the law deduced his duty. But the declaration does not state the means, and, therefore, it lays no foundation for the duty. This objection strikes me as fatal. The overseer ought to have had an opportunity, by pleading, to traverse the facts creating his particular and special duty to repair the bridge, but the plaintiff deprived him of that opportunity by omitting to state any such facts. Nor will it be sufficient to say, that the facts creating his duty must have been shown upon the trial, and that we are now, after verdict, to presume so. The court are never to presume a cause of action, even after verdict, when none appears. A title defectively set out may be cured, but not a total defect of title. (1 Salk. 364. 3 Wils. 275. 3 Burr. 1728.) Suppose the declaration had only stated, that it was the defendant’s duty to repair a certain bridge, and that, by the neglect of such duty, the plaintiff had lost a horse, but had omitted to state how it, was his duty, and had not even stated him to have been an overseer, would that have been sufficient? Yet we might, with equal reason, presume, in that case, as in this, that the duty, whatever it was, or from whatever quarter it arose, must have been made out at the trial, or a verdict could not have been rendered. Stating the defendant to be an overseer, without saying more, is not stating the duty. The word overseer might as well have been omitted, because an overseer is not, merely as such, and by virtue of his office, bound to repair a bridge. He is only bound, under special circumstances, occurring while he is in office ; arid it is those special circumstances that create the duty, and not the office, by itself. There must be the office, and there must be the ♦money, and they both must concur to create the duty, and the absence of the one is just as fatal to the right of action as the absence of the other.
The rule, on this subject, is well stated by Lord Ch. B. Gilbert, (Hist. C. PI. 139.) when he says, that “ if any thing essential to the plaintiff’s action be not set forth there, though the verdict be found for him, he cannot have judgment, because, if the essential part of the declaration be not put in issue, the verdict can have no relation to it, and if it had been put in issue, it might have been found false. And such matter, as is the foundation of the action, not being alleged, there is no ground for the judgment; as if an action of trespass be brought by a master for beating his servant, and it does not sav, per quod servitium amisit, this is ill after verdict. *360 Whatever is essential to the gist of the action, and cannot be cured by verdict, are such substantial facts as must be kid, so that the defendant may traverse them distinctly, if he pleases; for, as he may traverse the whole, so he may traverse each substantial part, in order to put the weight of the cause Up0n any thing that will put an end to it.”
On the other hand, those defects, or omissions, in pleading. which are cured by the verdict, are those necessary circumstances which are implied by law, and which inevitably follow from the substantial fact charged. Thus, where it is pleaded, that land was assigned for (lower, it is not necessary to say it was by metes and bounds, for that follows of course, as included in a lawful assignment; and where it is pleaded that the sheriff' made his warrant, it is presumed to have been under seal, for it could not have been a warrant if it was not; and if a man avers he is heir to A., the death of A. is implied, for there could be no heir if he were living.
There are some important cases to which I may refer, as a further and more full and complete illustration of these distinctions.
In Rushton v. Aspinal, (Doug. 679.) the suit was against the endorser of a bill of exchange, and the declaration stated, that the acceptor had accepted, and, according to his accept-anee, on request, had refused to pay, of all *which the defendant had notice on the day of the date. This was a mistake in the pleading, for the bill was payable in three months after date. On error to the K. B., alter verdict, it was contended, on one side, that the facts of the demand and notice were circumstances, without which the jury would not have found for the plaintiff, and it must now be presumed that they were proved to have been made at the proper time. But to this it was replied, that if the rule be carried so far, a writ of error could never be supported in any case after verdict. The court would intend, that facts imperfectly stated had been completely proved, but they never could presume, that a material fact, which was not at all stated, had been proved. Lord Mansfield, in giving the opinion of the court, in favor of reversing the judgment, observed, that in looking into the cases, he found the rule to be, that where the plaintiff had stated his ground of action defectively or inaccurately, the circumstances requisite to complete the title so imperfectly stated, must be proved at the trial, and it is a fair presumption, after verdict, that they were proved. But if he omits to state his title, it need not be proved, and there is no room for presumption. That in the case before him, it was not requisite to prove either a demand on the acceptor, or notice to the endorsor, because they were not laid in the declaration, nor were they circumstances necessary to any of the facts charged. He referred for illustration to the case of Hitchin v. Stevens, (2 Show. 233.) where the grant of a reversion was stated without attornment; *361 but as the attornment was a necessary ceremony to give effect to the grant, it was presumed to have been proved. He referred, also, to the case of Buxendin v. Sharp, (2 Salk. 662.) where the plaintiff declared, that the defendant kept a bull that used to run at men, but the scienter having been omitted in the declaration, it was held bad after verdict, for the action would not lie unless the owner knew of this quality in the bull; and it was not to be intended to have been proved at the trial, because it was not charged.
it appears to me, that the declaration, in the present case, is more thoroughly defective than in any of the cases which have been mentioned. It is only stated, that the defendant, %ot regarding his duty as overseer, did not repair the bridge ; but there is no fact charged, to show that it was his duty more than the duty of any other man. It might as well have said, that, being supervisor, or commissioner, or justice, or constable, he disregarded his duty, and suffered the bridge to remain broken. There is nothing in the statute to make it his duty to repair bridges, unless he happens to receive moneys by fines or commutation, or under the order of the commissioners, and no such fact is charged; and it being a substantive fact by itself, and not necessarily implied in the fact charged of his being an overseer, it is not to be presumed to have been proved.
The case of Spieres v. Parker, (1 Term Rep. 141.) is another pertinent decision on this subject. It was an action of debt under the statute of 19 G. 2. for a penalty for impressing a seaman, and the declaration contained an averment, that the seaman had not deserted from his majesty's ship Diamond. A motion was made in arrest of judgment after verdict, on the ground, that the declaration ought to have followed the statute, and averred, that the seaman had not before deserted from any of his majesty’s ships of war. The objection prevailed, and Mr. J. Bailer observed, “ that nothing was to be presumed after verdict, but what was expressly stated in the declaration, or what was necessarily implied from the facts which were stated.” He said he knew of no decision against that rule, and he gave a familiar instance of an exception to it, in the case of a feoffment pleaded without livery, where the livery is implied, because it was a necessary part of a feoffment. He made similar remarks in the subsequent case of Bishop v. Hayward, (4 Term Rep. 470.) in which he said, that “ we were bound to look at the title which the plaintiff himself had stated, beyond which no presumption could be admitted. The cases of presumption are, where the plaintiff has stated a case defective in form, but not where he has shown a title defective in itself, and on the face of it.”
For these reasons, as it appears to me, the declaration did not state any facts requisite to show, that the overseer was bound to repair the bridge, and that, consequently, the judgment is erroneous, even admitting that the overseer #might, *362 under certain circumstances, be responsible in a private action for neglect of duty.

January 10th.

In either view of the case, then, whether we look to the nature of the action, or to the manner in which the party has stated his complaint, I am of opinion, the judgment is erroneous, and ought to be reversed.
This being the unanimous opinion of the court, it was thereupon ordered and adjudged, that the judgment of the Supreme Court be reversed, &c.
Judgment of reversal.