SMITH *vs.* WRIGHT and others, commissioners of highways of the town of Kent.

It is the duty of commissioners of highways to repair bridges, in all cases, when means are provided by law for that purpose.

The commissioners, if they have the means, or have the power of being supplied with the means, to repair the bridges in their town, and neglect to use and exercise the same, are liable for any injury which may result from their neglect of duty.

THE complaint charged that in May, 1854, the defendants were commissioners of highways of the town of Kent, in the county of Putnam. That it was their duty as such commissioners, to repair or cause to be repaired the bridges in said town, and the plaintiff averred that from the sources mentioned in the complaint the defendants had, or might have had ample and sufficient means to keep all the bridges in said town in repair. That in consequence of the neglect of the defendants to repair one of the bridges in said town, the same was rendered unfit and unsafe for travel, and the horse of the plaintiff, in crossing it, was injured to the amount of $150. To this complaint the defendants demurred.

*G. Dean,* for the plaintiff.

*C. GaNun,* for the defendants.

DAVIES, J. The defendants by their demurrer have admitted all the allegations of the complaint. The material ones to be considered for the present, are : 1. That it was the duty of the defendants to have repaired the bridge, at which the injury to the plaintiff occurred. 2. That the defendants had ample and sufficient funds for that purpose ; or if they had not, it was through their neglect or default.

In reference to the first point there can be no doubt, that it was clearly the *duty* of the defendants to repair the bridge in question. This has been the recognized law of this state ever since the decision of the case of *Bartlett* v. *Crozier,* (17 *John.* 439.) This was an action against the overseers of highways

Smith *v.* Wright.

for injury caused by their omission to repair a bridge. Chancellor Kent, who delivered the opinion of the court, came to the conclusion that no action would lie against the overseers, because they act only under the orders of the commissioners, who alone are the responsible persons in respect to the repair of bridges. The statute gave them the care and superintendence of the highways and bridges; and *made it their duty* to cause them to be kept in repair. In that case he held that this duty did not exist absolutely, but only when the commissioners had money in hand arising from penalties and forfeitures, or which had been paid over to them under the direction of the supervisors; and inasmuch as the law had not supplied them with pecuniary means, nor armed them with the coercive power to meet and sustain so heavy a responsibility, an action would not lie against them.

In the case of *The People* v. *The Commissioners of highways of Hudson*, (7 *Wend.* 474,) the court quote from the opinion of Chancellor Kent, in *Bartlett* v. *Crozier*, as containing the true rule on the subject. That was an application for a mandamus to compel the defendants to build a bridge which would cost over $1400. The application was denied, for the reason that the only sum at the disposal of the commissioners in any one year was $250, for the repairs of all the highways and bridges in the town. The statute, it was remarked by the court, did not extend their duty beyond their means. This case clearly affirms the rule laid down in *Bartlett* v. *Crozier*, that it was their duty to repair to the extent of their means. The same point was ruled in *The People* v. *Adsit*, (2 *Hill*, 619,) which was an indictment against commissioners of highways for neglect of duty in not repairing a bridge. The indictment contained no averment that the defendants had funds or other means to defray the expense, and the court were of the opinion, that the existence of the funds or other specific means, was a condition precedent to the obligation of commissioners of highways to repair bridges, and in the case of *Barker* v. *Loomis*, (6 *Hill*, 463,) it was held that commissioners of highways were

not bound to build or repair roads or bridges until the necessary funds were provided for that purpose.

I think therefore, that it may well be regarded as settled by these decisions, that in all cases the duty to repair is unquestionable when means are provided by law for that purpose. That the commissioners, if they have the means, or have the power of being supplied with the means, and neglect to use and exercise the same, are liable for any injury which may result from their neglect of duty.

But whatever doubt may have existed on this point, it seems to me that it has been removed by the two cases to which I shall now refer. In *Adsit* v. *Brady*, (4 *Hill*, 630,) the supreme court applied these principles. The defendant was a superintendent of repairs on the Erie canal, and the action was brought against him for damages sustained by the plaintiff in not keeping the canal in good repair, and removing obstructions to the navigation. The injury was caused by a sunken boat, which obstructed the navigation and rendered it unsafe, and had caused the plaintiff's boat to sink. The defendant demurred to the declaration, but the court decided that the superintendent was bound by statute to keep the section of the canal committed to his charge in repair, and that under the provisions of that statute, he had or *was in fault for not having* sufficient funds in his hands for that purpose, and that it was therefore his duty to repair without any unnecessary delay. The court say "when an individual sustains an injury by the misfeasance or nonfeasance of a public officer, who acts or omits to act, contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case." This principle, the court said was well settled, and so well settled did it appear to them, that they did not adduce any authority to sustain it. There can be no doubt of this.

Applying these principles to the case now under consideration, what is the unavoidable conclusion ? None other than that the defendants are liable to the injured party as public officers. They admit by the demurrer either that they had ample and sufficient means for the repair of the bridge in ques-

tion in their hands, or that they were in fault for not having the same. In either case they are liable. I have not overlooked the distinction which the counsel for the defendants so ably and ingeniously undertook to draw between that case and the present, viz : that the plaintiff had a legal right to the use of the canal by paying toll therefor, and that therefore the defendant was liable, as in the case of a turnpike or railway. But the counsel must have seen that the case did not turn at all on that point. It was against a public officer for neglect of duty, and the court held him liable, because an injury had occurred, which he had the means, or might have had the means of preventing. The liability on the ground supposed by the counsel would have been complete, whether the owners of the canal, turnpike or rail road, or their agents, had the means or not to keep the same in repair. If they had not the means, the law compels them to provide the same, and for any injury arising from their negligence in any manner, creates the liability.

All the points arising in this case have been fully discussed and passed upon in the case of *Hutson* v. *The City of New York,* (5 *Sand. S. C. R.* 289.) The opinion of a majority of the court in that case has been affirmed by the court of appeals, and I must regard it as the law in this state. It will be observed that it was dissented from by one of the most learned and upright judges, who has ever occupied a place in the judiciary of the state, the late learned Justice Sandford, of whom it has been well said, that "we are at a loss whether most to admire— his deep and extensive learning as a lawyer, his diligence, probity and wisdom as a judge, his urbanity and refined sentiments as a man, or his piety and humility as a christian."

Judgment must be rendered for the plaintiff upon the demurrer in this cause, with liberty however, to the defendants, within twenty days after the service of notice of this judgment, to withdraw the demurrer, and answer the complaint on payment of costs.

[DUTCHESS SPECIAL TERM, February 9, 1857. *Davies,* Justice.]