’ Peck, C.J.
It is undoubtedly true as a general rule, that when, by statute, the performance of a public duty is cast upon a public officer, and he willfully neglects to perform that duty? by which neglect another suffers some special damage, the person thus guilty, is liable in an action on the case, for such damages, in favor of the party injured, unless the statute creating the duty, provides a peculiar and exclusive remedy; and that such private remedy is not taken away, by the mere an nexation of a penalty for the public wrong, recoverable by indictment or at the suit of a common informer.
But this, like all other mere general rules, is subject to exceptions, and, among others, as ancient perhaps as the rule itself, is this, that where the duty is imposed by statute upon minor political organizations or quasi corporations without their consent, for purposes of public policy, and not for their benefit but that of the public at large, such omission of duty lays no foundation for the recovery of private damages, unless such recovery is expressly authorized by the s'tatute.
The primary duty of keeping the public roads and bridges in this state in repair, is cast by the statute upon the townships in which they are located. The trustees are authorized to establish, alter and vacate township roads, to lay off the township into suitable road districts, and to determine the number of supervisors. They are also directed to apply the funds arising from the county road tax, to the building of bridges and repair of roads. All the male persons of the township, between the ages of eighteen and fifty-five, are required to perform two days’ labor in each year upon the roads, at the call and under the direction of the supervisor, and in extraordinary exigencies, they may be required to 'labor an additional day. It is apparent then, that the entire burden of keeping the roads in repair is cast upon the township, and the action of the trustees in the first instance, and of the supervisor in the second, are but so many instrumentalities provided by law, for the performance of this duty by the people of the *69 township, and the liability of the supervisor should be commensurate only with that of the township, for an omission of the duty he is thus delegated to perform. The statute which imposes the duty of repair upon the supervisor, and, for that purpose, permits the application by him, to ¿, limited extent, of the labor and funds of the township, while it subjects him to a penalty for an omission of the duty, does not expressly authorize suits for special damages resulting to individuals from its non-performance.
At common law, the several parishes in England were bound to repair all highways within their respective limits, unless,by prescription or otherwise, they could cast the burden upon particular persons or other corporations, and were subject to indictment if they failed to perform the duty; but were not liable to the suits of individuals, for special damages occasioned by the want of repair. This latter proposition is to be found in Bro. Abr. title sur le case, pi. 93, and is now the settled law in England. See Russell v. The Men of Devon, 2 D & E. 667; Makinnon v. Penson, 25 L. & E. 457. It has alsc been very generally affirmed in this country. In Mower v. Leicester (9 Mass. 247), which was an action against the. town of Leicester for damages to the horse of the plaintiff, caused by the bad repair of a bridge which it was the duty of the town, under the statute, to keep in repair, it is said to be well settled, that no such action would lie at common law, and that none could be maintained under the statute, as no such private action was thereby given. The court remark that, “corporations created for their own benefit, stand upon the same ground as individuals,” and are liable for neglect of duty at the suit of the party injured thereby; but that “ quasi corporations, created by the legislature for purposes of public policy, are subject by the common law to an indictment for the neglect of duties enjoined on them, but are not liable to an action for such neglect, unless the action be given by some statute.” The like distinction is also taken by C.J. Parsons, in Riddle v. Proprietors of, etc. (7 Mass. 186), who there says: “We distinguish between proper aggregate corporations, and the inhabitants of any district, who are, by statute, invested with *70 particular powers without their consent. These are in the books sometimes called quasi corporations; of this description are counties and hundreds in England, and counties, towns, etc., in this state. Although quasi corporations are liable to information or indictment, for a neglect of a public duty imposed on them by law, yet it is settled in the case of Russell v. The Men of Devon (2 D. & E. 667), that no private action can be maintained against them for a breach of their corporate duty; unless such action be given by statute.” So, in Bartlett v. Crosier (17 Johns. 439),-it was held, that a suit against an overseer of highways, could not be maintained by an individual to recover damages to his mare, occasioned by the overseer’s neglect to repair a bridge, where such right of action is not expressly given by the statute. The chancellor, in delivering the unanimous opinion of the court, says, that the law renders public officers liable to special damages for a neglect of duty only in those cases, “ in which their services are not gratuitous or coerced, but voluntary and attended with compensation, and where the duty is entire, absolute and perfect.
The services of a supervisor under our statute, can not be said to be entirely voluntary. He is subject to a fine, if he refuses to serve when elected to the‘office. His duty is not entire, it being shared with others. The township trustees are required, by the same statute, to apply the road tax to the building of bridges and the repair of roads, and to contract for the erection of bridges and to accept them when completed. Nor is his duty “ absolute and perfect.” It is, beyond question, dependent upon having within his control unappropriated funds and labor, belonging to the township, and sufficient to make the required repairs. The present ability of the supervisor is not stated in the petition, and it is said in the last case, that such omission is not aided by verdict. He is only bound under special circumstances occurring while he is in office ; and it is those special circumstances that create the duty, and not the office by itself. Both must concur to create the duty, and the absence of the one, is just as fatal to the right of action, as the absence of the other.
Lynn v. Adams, 2 Carter (Ind) Rep. 143, is a case very *71 similar to the one under consideration. It was a suit against a supervisor for willful neglect, causing the death of plaintiff’s horse, and it was held in that case, “ that a private action will not lie against a supervisor for damages sustained fro m his neglect to keep the roads and bridges in his district in repair.” Smith, J., examines the authorities at some length, and arrives at the conclusion, that the supervisor could not be subjected in the action; and under a statute similar in that respect to ours, he also holds that the services of the supervisor are not voluntary within the rule. He also places the liability of the supervisor upon the same grounds as that of the township; as was also done by the chancellor in the case in 17 Johnson, supra. See also Morey v. Newfane, 8 Barb. 646.
In several of the states, provision has been made for the recovery of damages by private suit against towns for not repairing roads, bridges, etc., but in all of them it has been held, in strict affirmance of the common law rule we have adverted to, that the liability is created solely by statute, and can not, therefore, be extended beyond the precise statutory measure. See cases cited from "Vermont, New Hampshire, Maine, Massachusetts and Connecticut, in Angelí on Highways, 268.
These authorities seem decisive of the question raised by the demurrer, and show, conclusively, that the action in the c ourt below can not be maintained.
If there were any doubt as to the asserted liability of the supervisor in this case, a reference to sections 13 and 18 of the same statute would dissipate the doubt, and exclude all presumption of a legislative intent to attach any such liability to the duty imposed upon a supervisor. By those sections, persons injured by obstruct ons placed upon a road or highway, may sue the wrongdoer for the injuries inflicted; and the omission to reserve a similar right, in favor of persons injured by the neglect or misconduct of a supervisor, certainly, affords a strong presumption that no such remedy was intended. The office is one of no emolument, but of much perplexity; its duties onerous, its powers extremely limited, and its compensation trivial. No one now covets, but all seek to evade it. If to its other embarrassments, liability to private suits should *72 be superadded, .no responsible. citizen would accept it, though «the penalty for refusal were increased many fold.
The supervisor was not, as an individual, under any obligation to repair the bridge, and the statute imposing the public duty does not confer a private right, nor impose a private duty as to third persons, as is done, where a deed is delivered to a recorder for entry, or a writ- to a sheriff for service and return. In the latter instances, and others of a similar character, the statute imposes a personal duty for the benefit of the person invoking its aid; and the officer would, doubtless, be liable for the special injury resulting from an omission to perform the duty enjoinedi Of this latter class also, are the cases of a refusal by the judges of an eleetion to receive a lawful vote tendered them (11 Ohio Rep. 372, 376), and a willful refusal by a supervisor to give a certificate for work done on the highway (Wright’s Rep. 86); both are breaches of a personal duty imposed by the statutes.
Laws imposing upon supervisors the duty of repairing roads and highways, and subjecting them to penalties for misconduct in office, have been in force in this state ever since 1804, and yet, counsel with all their industry, have not found a single well considered case, in which an action for special damages for a supervisor’s neglect to repair, has been maintained; although hundreds of instances must have occurred within that period, in which such injuries have been inflicted; and that fact alone, is strong, if not conclusive evidence, that, in public estimation, no such action is maintainable.
We will conclude this opinion by adopting the language of the chancellor, in the case cited from 17 Johnson, and by substituting “ supervisors ” for “ overseers ” (who discharge a similar duty in the State of New York); his remarks are peculiarly applicable to our condition. The learned chancellor says: “We have every reason to presume, that our legislature did not intend to charge the officers entrusted with the superintendence and repair of the public roads and bridges, with any greater responsibility, by private suit, than the penalty given against overseers for neglect of duty. If that had been their intention, and if they had meant to introduce a new *73 rule on the subject, I think the law would and ought to have been more explicit. To sustain an action, at this day, against all former practice, is taking these officers by surprise. We have had our overseers from the first settlement of the colony; and the weight and responsibility of the trust, must have been understood and settled in public opinion, according to the English law.”
Judgment of the common pleas affirmed
Gholson, Brinkerhoee, Scott, and Ranney, JJ., concurred.