Johnson, J.
It is provided by statute that commission ers of highways, in the several towns in this state, shall have the care and superintendence of the highways and bridges therein. And it is made their duty to give directions for the repairing of the roads and bridges within their respective towns, and also to cause the highways and the bridges which are or may be erected over streams intersecting highways to be kept in repair. (1 E. S. 501, § 1.) It is quite certain that the bridge in question had not been kept in repair, but was, at the time the accident happened, in an unsafe and dangerous condition. Nor had any directions been given, or other steps been taken, for the repairing of the same. But it would not necessarily follow from this that the defendants should be held liable for the injury in question, even should it be determined that an action lies against commissioners of highways, in favor of an "individual who has sustained damage by reason of a clear omission of duty on their part to cause such repairs to be made. That seems to be still an open question in ' this state, and it is wholly unnecessary to determine it in the present case.
It is well settled that the duty to make repairs does not attach until funds are provided for the purpose by the public, and that until they are in funds sufficient to make such repairs, a mandamus will not lie to compel the commissioners to make them, nor an indictment for omitting the performance of the duty, nor any action founded upon the breach of the fluty. (The People v. Commissioners of Highways of Hudson, &c. 7 Wend. 474; The People v. Adsit, and others, Commissioners of Highways, &c. 2 Hill, 619; Barker v. Loomis, 6 id. 463; Bartlett v. Crozier, 17 Johns. 451; Shepherd v. Lincoln, 17 Wend. 250.)
Upon the facts established in this case there has obviously been no neglect, or breach of duty, on the part of the defendants, to the public or to individuals in reference to this particular bridge. Although it is found that at the *304 time the injury was occasioned, the defendants were, and for some time previously had been, in the possession of funds applicable to the repair of bridgés in the town, to an amount sufficient and more than sufficient to repair this bridge; yet it is also proved that there were several other bridges in the same town which then needed rebuilding and repairing, and that such funds were not sufficient to repair all in the town which needed repairing. It is further found that before the accident in question the defendants had procured materials for rebuilding bridges other than the one in question, which needed rebuilding, and the completion of which would have required' more funds than the defendants had. It thus appears clearly that the defendants, so far from neglecting their duties as commissioners, were proceeding at the time, in the discharge of' such duties, in rebuilding and repairing other bridges needing repairs, the repairs of which would absorb all' their funds. Hot having sufficient funds provided, they were not bound to repair the whole. They owed no duty to any one to undertake more than the funds in their hands would complete and pay for; and they necessarily had a discretion to exercise, as to which of the bridges in the town they would undertake to repair. This discretion, for aught that appears, they exercised in good faith. It is to be presumed that they did so. The fáct that the defendants, after the accident in question, actually used the funds* in their hands to rebuild this bridge, and suffered the others to go unrepaired, adds nothing to the strength of the plaintiff’s case. They had the right to change their plans when the greater necessity for this repair became so apparent, and the fact that they did so, raises no implicatian against them. They have therefore been guilty of no loches or breach of official duty, and the action cannot be maintained.
The judgment was right and should be affirmed.
*305 Wright, J.
This case, although of minor importance to the immediate parties, is, in the principle involved in it, of great public importance.
In June, 1856, as the horses and wagon of the plaintiff were being driven across a bridge on the public highway-in the town of Hume, the bridge broke down and precipitated the horses and wagon into the stream below, injuring them in the sum of $150. The stringers of the bridge were rotten; and, although apparently safe, the bridge had been for a considerable period in a dangerous and unfit condition for use. Neither of the defendants, as commissioners, had made an examination of the bridge at any time, and one of thqm had' been informed a year or two previous that its timbers were not safe. At the time of the accident, and for several weeks previous thereto, the defendants had a sufficient amount of funds in their hands applicable to that purpose to have repaired or rebuilt the bridge, and did immediately afterwards rebuild it, with such funds; but at the same time there were other bridges in the town, some of which required repairing and some rebuilding. The defendants had not funds, or the means of obtaining them, sufficient in amount to repair or rebuild all of said bridges. Before the bridge fell they had procured materials for the purpose of constructing such other 'bridges, to complete which would have required more funds than the defendants had, or had the means of obtaining in their official capacity. Upon these facts the court below held that the plaintiff was not entitled to recover of the defendants for the damages sustained by him on account of the injury.
It was sought to make the defendants liable to the plaintiff for a neglect of official duty. They neglected or omitted to keep the bridge in question in repair, and because, by such neglect or omission, the plaintiff sustained an injury, it is claimed that he may have his action against them for the damages. If this be so, and town commis *306 sioners are liable in a civil action for injuries to individuals arising from defective highways in their town, the announcement of the doctrine will at least excite the public- surprise. From the organization of -the state government down to 1820, there was no known instance in the state of an attempt to enforce a civil remedy in respect of highways. In 1820 the case of Bartlett v. Crozier (17 John. R. 438), which was an action against an overseer of highway for neglecting to repair a bridge, was brought into the court for the. correction of errors, when that court unanimously decided that no civil action could be upheld for such neglect. Chancellor Kent, who delivered the opinion of the court, in a learned examination of the law, held that in no event was the overseer liable; and although the question was hot strictly before the court, expressed a decided opinion that the commissioners were not -liable to a private suit, whether having, funds in their hands to make repairs or not. ■ For aught that is known, that opinion has been acquiesced in, except in a single instance, up to the present attempt to make the defendants liable, although numerous injuries must have occurred from defective highways of the state during the last forty years. It is true that some judges have assumed that commissioners of highways are liable in a civil action, at the suit of the party injured, for neglect of the duty to make repairs, if they had the needful funds; but I know of but a single decision' to that effect. (Smith v. Wright, 24 Barb. 170.) I apprehend, therefore, atthis late day, with our highway acts in respect to the duties and obligations of town commissioners substantially unchanged, to hold such commissioners liable, in -a civil action, at the suit of an individual, for a mere omission to keep the highways of their town in repair, would work a change in the law adverse to the general understanding of the profession and the public for inore than half a century.
But if the question is to be agitated anew, in my judg *307 ment the reasoning of Chancellor Kent, in Bartlett v. Crozier, and of Judge Selden, in Weet v. The Trustees of the Village of Brockport (16 N. Y. 161), is conclusive against such a right of action. Chancellor Kent’s objection to such a suit was based upon a construction of our highway acts, and the argument against the right to be deduced from the English law on the subject of the liability of this class of officers. Speaking of the duty imposed by the statute upon town commissioners in respect to roads and bridges of the town, he says: “There is no certain, stable, absolute duty in the case. It is. not like the case of an individual bound by a private statute, or by a certain tenure, to keep a road or bridge in repair, nor like the case of turnpike companies. There the duty is perfect and binding at all times, and is founded on a valuable consideration. The roads and bridges must at all events be kept in repair, according to ordinary diligence. It is a condition of the grant. The duty is not casual or contingent, but inevitable. In the case, however, of these commissioners and overseers, the duty depends upon a train of circumstances; it is very indefinite, and is varied and regulated by their discretion. There is not that precision and certainty of duty that "ought to make them responsible to individuals to any extent, and for any damage. The law has not supplied them with the pecuniary means, or armed them with the coercive power requisite to meet and sustain such an enormous and dangerous responsibility. The argument to be drawn from the English law on the subject is very strong against the right of action. There are officers under the English law, equally as under ours, charged with repairing the roads and bridges; they have existed and been known from ancient times, and yet there is no case in the English books, nor any precedent under our colony government, of any such private action. This affords a very strong presumption that no such action will lie.” The chancellor rests his argument upon three grounds: 1st. The nature *308 of the duty which the highway act imposes on the commissioners, It is not absolute and imperative. It is made dependent upon a train of circumstances. It is indefinite, and is varied and regulated by the discretion of the officers. 2d. They are pot supplied by the law with the pecuniary means, nor with the coercive power requisite to meet and sustain a responsibility to each and every person who may have occasion to use them, for an injury sustained, by the roads and bridges of their town being out of repair; and 3d. There is no precedent in the English law, nor under our colonial or state government, for sustaining any [such private action against officers charged with repairing the roads and bridges. And how just and satisfactory is his view of the question. These commissioners are officers to whom a duty-to the public is confided. The care and superintendence of the public roads and bridges are entrusted to them. Amongst other things the statute Charges them with the duty of keeping the roads and bridges of their town in repair. The imposition of this duty is for public purposes only, and is made dependent, by the law, upon a train of circumstances, over some of which, at least, they have no control. The duty is not to keep one but all the bridges of the town in repair, and not one more than another; and hence it is very indefinite, and is necessarily varied and regulated by the discretion of the officers. Whether this or that bridge requires reparation, or whether any funds that may happen.to be under their control are required for the repair of one bridge more than another, is necessarily left to the discretion and judgment of the commissioners. With the exception of the assessed highway labor, they are.wholly dependent on a vote of the town even for the means to work the roads, and' build or repair the bridges, which the law places under their care. If the town refuse to appropriate money for the. purpose, though all the bridges within its limits needed repairing, the commissioners’ hands are tied. They may know, or be *309 notified that the bridges are out of repair, yet the law has not supplied them with the pecuniary means, or the power to coerce them, required for their reparation, much less to meet and sustain a responsibility to individuals for an omission to repair. A section of the highway act enumerates as one of the duties imposed on this board of public officers “to cause the highways and bridges which are or may be erected over streams intersecting highways, to be kept in repair.” But what of that? It is but parcel of' a general highway system for the public benefit. We must look at the entire act, and the system it establishes, to determine what the duty thus enjoined is,—its nature and extent. It will then be seen, as was said by Chancellor Kent, that “there is no certain, stable, absolute duty in the case.” There is not that precision and certainty of duty that should make them responsible in a civil action, for an omission to perform it. Of themselves, they are not supplied by the law, with the pecuniary means, or with the coercive power to obtain them, to make them to discharge the duty under all circumstances. It could, therefore, never have been intended by the legislature, and there is no precedent for it in otir own or the English law, to impose on officers charged with repairing the public roads and bridges, the enormous and burdensome responsibility of answering to any and every person who uses such roads or bridges, for any injury happening from an omission to keep them in repair. If the highway act really imposes this burden, it applies, not only to the bridges but the roads of the town, and any and all accidents occurring from bad roads or broken bridges would subject them to a private action. It will not do to say that they are thus liable, when they happen accidentally to have funds at command to make repairs and omit to make them, and are not liable when without them. This would be the establishment of an impracticable and fluctuating rule of liability, depending on circumstances not within their control, *310 and which receives no countenance from the highway act. They are responsible to individuals, if at all, upon the theory of a neglect to perform a. ministerial duty, absolutely and imperatively imposed on them by law, and which they are paid for discharging, and not because they may happen to have means at their command at a particular juncture of.time, and neglect to use them.
Apart, however, from the highway laws of the state, and the peculiar nature of the duty imposed" thereby upon the officers charged with the care and superintendence of the public roads and bridges, the ground taken by Judge Sebeen in West v. Trustees of Brockport, and adopted by this court in Hickok v. Trustees of Plattsburgh (16 N. Y. R. 161), as a correct exposition of the law, is decisive of the question of the commissioners’ liability to a civil action for an injury resulting from their neglect to repair. His position is that the duty and obligations of these officers are to the publie alone; they receive no compensation from and owe no duty to any private individual; they act for the public in general, and are accountable to the public alone for their negligence. He distinguishes between a mere neglect of duty by public officers and an affirmative act by which sonle injury is done, and between officers fhat owe a duty to individuals from whom they receive a compensation for the performance of some specific service, and those whose obligations are to the public generally. In the for-" mer case, the officer is responsible" in a private action for neglect of duty; in the latter, the remedy is by indictment only. This distinction seems to "rest upon principle, and is sustained by authority. It would appear to be repugnant to principle, to hold that a public officer who owes no duty to individuals, and performs none especially for them, but acts for the public at large, should, for a mere neglect, without malice and not personal, be amenable to a civil action in favor of an injured party; and there is no reported adjudication, either in this state or in England that declares *311 such a liability, except it may be the case of Adsit v. Brady (4 Hill, 630.) On the other hand, a contrary doctrine is held. In Law v. Cotton (1 Ld. Raym. 646), the action was against the postmaster general, who was sought to be made liable for the negligence of one of his subordinates, and it was held that the action would not lie. A principal objection taken to its maintenance by the court was, that the post-office “ was a matter founded in government,” and that the postmaster general received no premium or compensation for his services from the plaintiff. This was in 1699. In 1778, the same question was again presented.in the case of Whitfield v. Lord Le Despencer (Cowp. 754), and the decision in Law v. Cotton fully sustained. In Brooke’s Abridgment, title “Action on the Case,” it is said, upon the authority of the year books, that if a highway be out of repair so that a horse Was mired and injured, “ no actionlies bythe owner against him who ought to repair it, for it is a public matter, and ought to be reformed by presentment;” and in Russell v. The Men of Devon (2 Term R. 667), which was a civil action against the inhabitants of a county for an injury sustained in consequence of a county bridge being out of repair, Ashuest, J., after stating another reason why the action could not be maintained, added; “But I‘think the case cited from Brooke’s Abridgment is a direct authority to show that no such action can be maintained; and the reason of that case is a good one, namely, because the action must be brought by the parties.” There are other cases to the same effect; and, for example, that of Young v. Commissioners of Roads (2 Nott & McCord, 537), which is an adjudication upon the precise question. That was an action brought against the commissioners of roads for an injury to the plaintiff’s horse and wagon from the insufficiency of a bridge, which, it was alleged, they were bound to repair. The plaintiff had a judgment, and upon granting a new trial, the court said:- “ Where an officer has been appointed to act, not for the *312 public in general, but for individuals in particular, and from each individual, receives an equivalent for the services rendered him, he may be responsible in a private action for a neglect of duty; but where the officer acts for the public in general, the appropriate remedy for his neglect of duty is a public prosecution.” In the case of Adsit v. Brady (4 Hill, 630), Judge Bronson lays down the broad proposition, that, “when an individual sustains an injury by the misfeasance or non-feasance of a public officer, who acts or omits' to act ■ contrary to duty, the law gives redress to the injured party by an action adapted to the nature of the case;” but there is no reported English or American authority that justifies so broad a rule of liability of a public officer. There is no case where the duty of the officer was one done to the public at large, and not to any individual, either specially or for fee or reward paid by him; the officer has been made accountable in a private action for a mere neglect of duty; and the fact that no such action has been brought or sustained, either in England or this state for a century and a half, except the single case of Adsit v. Brady, affords a strong presumption that no such action will lie.
I am of the opinion, therefore, that town commissioners of highways are, in no event, liable to a private action for a mere neglect or omission to keep the highways of their towns in repair. If this were not so, however, and the law is, as has been assumed on one or two occasions by judges, that their liability depends on their having funds to make repairs, the facts of this case furnish no ground for a recovery against the defendants. It can only be claimed that they are liable for a neglect to keep the roads and bridges of their town in repair—in the event of.their having funds adequate to make the necessary repairs. If the funds at the command of the commissioners are insufficient for repairing all the bridges requiring repairs, the selection is necessarily referred to the discretion -of the commissioners, and for the exercise of that discretion they cannot’be made *313 responsible in a civil action. In this case the defendants, at the time the bridge broke, had in their hands funds sufficient in amount to have repaired or rebuilt the particular bridge; but at the same time there were other bridges in the town, some of which required repairing and some rebuilding, and they had not the funds, or the means of obtaining them, to repair and rebuild all of said bridges. Before the accident, the defendants had procured materials for constructing such other bridges to complete which would have required more funds than they had the means of obtaining in their official capacity. ' Thus there were several bridges of the town which needed repairing or rebuilding at the time of the accident; and referring to the uncontradicted evidence in explanation of the finding of the referee, all the money that the commissioners received from the cellector that year applicable to the repairs of roads and bridges was $220—of which sum they had expended $118 in April before the accident. They had, also, before the bridge in question fell, procured $100 worth of timber, and contracted for iron costing $97, intended for repairing or rebuilding other bridges. The entire fund, therefore, for the year at the command of the defendants was $220; there were a number of bridges in their town which required repairing or rebuilding besides the one that broke down; their funds were insufficient to repair or rebuild all of them; they selected bridges to repair in their judgment more insecure and dangerous than the one that fell, procuring materials for the purpose, but had not funds at their command sufficient to complete- such repairs, although enough at the time of the accident to repair the bridge causing it. With funds inadequate to malte the' necessary repairs to all the bridges requiring them, the defendants, selected those which, in their judgment, most needed repairing. The commissioners have discretion to expend the means at their command upon all or either of the roads or bridges that they shall deem best, and for the *314 exercise of this discretion they cannot be made accountable in a civil action.
I think the judgment of the supreme court should be affirmed.
Mullin and Hoqeboom, JJ., were for affirmance on the grounds stated in Judge Johnson’s opinion, without dissenting from Judge Wright’s views on the other point. Denio, Ch. J., was for affirmance on both points. Ingraham, J., was for affirmance, on the grounds that the defendants, as commissioners of highways, were not liable in a civil action for negligence, and that, it appearing that they had not sufficient funds to repair all the bridges, and. had appropriated the funds they had to the repairing of other 'bridges, they were not liable in this action, for the want of the necessary funds to repair.
Davies, J., was for reversal, and Selden, J., having been counsel, took no part in the decision. Judgment affirmed.