FRANK E. MAXIM, RESPONDENT, v. THE TOWN OF CHAMPION, APPELLANT.

*When a jury is justified in holding a town to be negligent, because of its having failed to erect barriers on the retaining walls of an embankment crossing a creek in a ravine.*

Upon the trial of an action, brought against the town of Champion to recover damages for bodily injuries sustained by the plaintiff by falling over an embankment to a bridge on a highway in the said town, evidence was given showing that the accident occurred about one-third of a mile from Champion village where the highway passed through a deep ravine, about three rods across, and over Deer Lick creek, over which a bridge was built upon an embankment, on each side of which was a retaining wall of dry stone; the retaining walls, where the creek passed through the bridge, being about eleven feet high and running to nothing at either end; from retaining wall to retaining wall the road measured about twenty-four feet, the road-bed itself being ten feet wide with a slope, something like the gable of a house, of seven feet from the outer edge on each side of the road-bed to the retaining wall, the top of which was two and a half feet lower than the level of the road-bed. No guard or barriers were erected along this highway on either side, and there was nothing to prevent persons from going off. Evidence was given by the defendant to show that the highway had been substantially in the same condition for a period of sixty-eight years, and that no railing had during that time been erected along the embankment.

The plaintiff, who was unfamiliar with the roadway in question, had been in a store in Champion, and started to return to Carter's, where he was employed in threshing, at about nine o'clock on a very dark and rainy night; he had never been on the road, at the place where the accident occurred, before, and in hunting for a turn, which led to the place where he was going, stepped down this embankment, got started under headway and went off the bridge or culvert and struck the rocks below.

Upon the trial the defendant's counsel requested the court to charge "that the fact that no accident had occurred at the place before is cogent proof of the absence of negligence on the part of the defendant," to which the court responded: "I say that is evidence which the jury may consider, but I refuse to charge that it is cogent evidence in this case. * * * I leave it for the jury to say how valuable the evidence is in this case, and to give it such weight as they deem proper."

*Held*, that such charge was proper.

The counsel further requested the court to charge the jury, "that failing to erect guards or barriers does not constitute negligence on the part of the defendant." The court responded: "I refuse to charge that; I refuse to charge that it *does*; I leave it for the jury to say whether it does or not."

*Held*, that this charge was correct.

That a claim made by the counsel for the appellant that if the commissioners of highways omitted to erect a barrier or guard along the wall where the plaintiff received the injury, that such omission was of a judicial character and could not be redressed in an action for damages, could not be sustained.

*Urquhart* v. *Ogdensburg* (91 N. Y., 67; 97 id., 238); *Monk* v. *Town of New Utrecht* (104 id., 552); *Hubbell* v. *City of Yonkers* (Id., 434) distinguished.

It was insisted by the defendant that because no injury had resulted from the road having been substantially in the same condition for sixty-eight years, that the commissioners and the defendant were exonerated from any negligence in continuing the highway in its then condition.

*Held*, that the trial judge properly passed upon that question, when he submitted it to the jury with the instructions that that circumstance should be considered by them, and that he would leave it to the jury to say how valuable the evidence was in this case, and to give it such weight as they deemed proper.

APPEAL from a judgment, entered in the office of the clerk of Jefferson county, on April 11, 1888, upon a verdict for $2,000, rendered at the Jefferson Circuit, and also from an order denying a motion for a new trial made on the minutes of the justice who presided at the trial.

This action was brought to recover for personal injuries sustained by the plaintiff in walking off from a high, unguarded bridge or embankment, in one of the public highways of the defendant on the night of the 9th of September, 1887.

The plaintiff alleged that, on the 9th of September, 1887, he received bodily injuries by falling over an embankment in the highway in the defendant's town, and that the commissioner or commissioners of the defendant's town, " for several years prior thereto, carelessly and negligently allowed and permitted said highway, bridge, culvert and embankment through said ravine or gulf, and over said Deer Lick creek, to be and remain out of repair and in an unsafe and dangerous condition for public travel, by reason of their being no guards or railing of any kind to protect travelers from falling over said embankment and down said precipice upon the rocks below." And he further alleged that while he was " lawfully traveling on foot on said highway, he, without any fault or negligence on his part, the night being very dark and rainy and there being no railing or guards of any kind along said dangerous place, stepped off said bridge and embankment, over said precipice, and fell violently upon the rocks and loose stones at the bottom of said ravine or gulf below, and thereby sustained great personal injuries." * * * And he further alleged " that said injuries were caused by the carelessness and negligence of the commissioner or commissioners of highways of said town of Champion, in failing and neglecting to repair said unsafe and dangerous place in said highway and to put the same in a safe and proper condition for public travel, by erecting and putting up suitable and necessary guards and railings along the same."

The answer contained a denial and an averment that the injuries were " caused by the negligence of the plaintiff himself." Upon the trial it was conceded that the commissioners of highways had " funds enough in their hands to have erected a guard or railing."

The place where the accident occurred was about one-third of a mile from Champion village, in the highway leading towards Black river, where it passed through a deep ravine and over Deer Lick creek. The ravine was three rods across, and the highway is constructed through it on an embankment forming a bridge across the creek.

The plaintiff was unfamiliar with the roadway in question ; he had been to the store in Champion and started to return to Carter's, where he was employed in threshing, about nine o'clock at night. He testified, " it was very dark and raining ; I thought we had gone about far

enough and began to look around for the turn; I had never been over the road before, except that portion of it lying between the cheese factory and the village; I had never been on the road at the place where the accident occurred before; * * * in hunting for the turn I stepped down this embankment, and got started under headway and consequently went off from the bridge or culvert, down this inclined way like a gable roof; it was so dark I couldn't see, and by this hollow or ravine looking darker than anything else around, I took it to be the road, and after I got started down this slant from the road-bed to the edge of the wall, I got started with such force that I couldn't save myself, and went off from the bridge and struck the rocks below; * * * the bottom of the gully is covered with rocks and stones that had fallen off from the wall; they were laid up along the sides of the culvert, laying there on the rocks; the perpendicular heighth is eleven feet; at the place the side is perpendicular; the road measures about twenty-four feet from retaining wall to retaining wall; the road-bed itself is ten feet wide; there is a slope of seven feet from the outer edge on each side of the road-bed to the retaining wall, and top of the retaining wall is two and a half feet lower than the level of the road-bed; the highway is two and a half feet higher than the top of the wall on the side I went off, and three and a half feet on the other side; the slope is something like the gable roof of a house; the bridge or embankment is about three rods in length; there are no guards or barriers along this highway on either side; nothing to prevent persons from going off."

Another witness said: "Where the embankment is there is a gully and bridge over the creek, built upon the embankment; there is a retaining wall on each side; a dry stone wall; it is made for the purpose of a bridge, and has a box culvert underneath it; the bridge proper is covered with logs, and then stones and dirt built over it; the walls are about eleven feet high at the highest point and run out to nothing on either end, but at the creek the highest heighth is eleven feet; the walls are about eleven feet high, right over the creek they are about twenty-four feet apart; it is a rough dry wall, laid up in some places two or three feet higher than the others; there is no railing there whatever, and this dirt is filled in between the two walls and ridged up in the

center; if I was driving I would not want to let a team pass me on this embankment; * * * I don't mean to be understood as saying that a road ten feet wide crossing a creek with these seven feet sloping down to the wall, and the wall eleven feet high, without any railing, was in a perfect condition."

There was evidence given by the defendant tending to show that the highway had been substantially in the same condition for a period of sixty-eight years, and that no railing had been erected along the embankment.

*Mullin & Griffin*, for the appellant.

*George S. Hooker*, for the respondent.

HARDIN, P. J.:

Carefully and clearly the trial judge submitted the question of fact to the jury, in respect to whether or not the plaintiff was guilty of contributory negligence on the occasion of receiving the injuries complained of. We think the evidence warranted the submission of that question to the jury, and that their verdict is conclusive upon that aspect of the case.

The trial judge also submitted to the jury, upon the whole evidence, the question whether "this road at the point where this accident occurred, on and prior to the date of the accident, was in a reasonably safe and suitable condition for the public travel; that is, whether the commissioners kept it in such repair and in such condition at that point as that it was reasonably safe and suitable for public travel." He also instructed the jury, viz.: "Highway commissioners do not undertake for the absolute safety of the highways of the town. They are only required to do what is reasonable, what is reasonable and proper under all the circumstances for the purpose of keeping the roads in such repair that they shall be reasonably suitable for the public travel."

At the close of the charge, the defendant's counsel requested the court to "charge the jury that there can be no recovery in this action, except for an omission to provide a railing upon the embankment." The court remarked, viz.: "A railing or some guard." Defendant's counsel: "Railing or barrier." Court: "I think I will charge that. What I mean is, I don't think that the jury could

be allowed to say that these commissioners ought to have built this road over, or made it wider. I do not see any neglect that, fairly, they could be charged with here, unless it be a neglect to furnish some barrier or rail to prevent a person going off at night." The defendant's counsel further requested the court to charge "that there can be no recovery in this action by the plaintiff, unless the accident which happened to him was to have been reasonably foreseen by a prudent man as likely to happen to a person traveling the roadway and using ordinary care." To that request the court responded : " Yes, if I understand that correctly. Of course, traveling at such a time and under such circumstances, the plaintiff claims that this was such an accident as even the commissioners should have foreseen." Thereupon the defendant's counsel further requested the court to charge, viz. : " That the commissioners of highways were not bound to erect railings which would protect travelers on the outside of the usually traveled portion of the highway." The court replied : " I dont quite understand that proposition. I don't know what you mean." Defendant's counsel : " I mean to say if a man was outside, traveling along outside of the usually traveled portion of this highway, that they were not bound to erect a railing which would protect him against the danger of running off this embankment." Thereupon the court responded as follows : " Certainly, if a man attempted to travel outside of the highway, I charge it ; but if you mean a man who, without intention to do so, gets out of the traveled part of the highway and falls over, that he should not be protected, that I cannot charge."

The defendant's counsel requested the court to charge, " also, that the fact that no accident had occurred at the place before is cogent proof of the absence of negligence on the part of the defendant." The court responded : " I say that is evidence which the jury may consider ; but I refuse to say that it is cogent evidence in this case. * * * I leave it for the jury to say how valuable the evidence is in this case, and to give it such weight as they deem proper." The defendant took an exception. The defendant's counsel further requested the court " to charge the jury that failing to erect guards or barriers does not constitute negligence on the part of the defendant." To that request the court responded : " I refuse to charge that ; I refuse to charge that it does. I leave it for

the jury to say whether it does or not." The defendant excepted. Defendant's counsel also asked the court " to charge that there is no evidence in the case that warrants a finding that the road in question was out of repair." The court responded : " I refuse to charge that. I leave that for the jury to say whether it was out of repair or not ; " and the defendant took an exception.

The defendant's counsel also asked the court to instruct the jury, "that they are not to consider the condition of the highway except as it bears upon the question of the necessity of barriers." To that the court responded : " I don't think I can charge that, that they ought not to consider the condition of the highway. I do not leave any other ground of negligence to them ; they cannot charge the commissioners of highways with negligence in not having a wider filling there, or not having a different shaped road. I charge, in other words, practically, that the only ground of negligence is the question whether they ought to have had on such road as that, under those circumstances, a barrier or rail. If that is what you mean, I charge it." The defendant took an exception to the " submission of the case to the jury."

In *Hyatt* v. *Trustees of the Village of Rondout* (44 Barb., 386), a question was presented very similar to the one before us. In that case it appeared that " on the upper side of the road is a high bank, and on the lower side also a steep precipitous bank, forty-one feet high, at the foot of which Rondout creek flows. The road is directly on the edge of the bank, and there was no guard or fender there to prevent a wagon and horse from going off."

The plaintiff's horse shied on account of some boatmen below the hill swinging lights, backed and went over into the creek with load and all. The plaintiff recovered a verdict ; and in the charge to he jury the court, among other things, instructed the jury to pass upon the question, "Whether it was, or was not, the duty of the defendants to put a guard at the point where the injury. occurred ; whether it was, or was not, negligence in omitting to do so."

In the course of the opinion delivered by HOGEBOOM, J., it is said, viz. : " It would appear to be sufficiently obvious that the duty of keeping a bridge or a highway in repair extended not merely to the floor of the bridge or the road-bed of a highway, but to proper guards or railing on their sides or borders, where necessary for the

safety or protection of the public; but the point has been repeatedly adjudicated." (*Palmer* v. *The Inhabitants of Andover*, 2 Cush., 600; *Hayden* v. *Inhabitants of Attleborough*, 7 Gray, 338; *Norris* v. *Litchfield*, 35 N. H., 271.)

The opinion concludes with an assertion that it was a question for the jury to determine, "Whether the place where the accident occurred required a guard or barrier in order to the safety and protection of travelers, and whether the defendants were guilty of actual negligence in not constructing such guard or barrier." The verdict was sustained, and the case was taken to the Court of Appeals and affirmed in 41 New York, 619. That case is referred to in *Monk* v. *Town of New Utrecht* (104 N. Y., 557).

The same principle was approved by this court in *Warren* v. *Clement* (24 Hun, 472), and the following language is used in respect thereto: "It is difficult in this case to suppose the defendants performed their duty if, during the two years they knew that the approach was unsafe and insecure and the place dangerous, they omitted to repair it or guard it by the expenditure of five dollars of the funds passing through their hands in that period." That case was cited approvingly in *Babcock* v. *Gifford* (29 Hun, 187), and referred to and commented upon in 24 Albany Law Journal, page 259.

The principle is laid down in Sherman and Redfield on Negligence (§§ 390, 391). In the latter section cited it is said: "Thus it is gross negligence to construct a passage-way along a precipice without having sufficient guards for the protection of travelers." And in Wharton on Negligence (§ 974), it is said: "The absence of any guard or railing at the side of a bridge forming part of a highway, is a fact from which the jury may find that the bridge was defective within the meaning of the statute rendering towns liable for injuries resulting from defective highways," and in section 976 the same author says, viz.: "The true test (as to negligence, in fencing roads), is whether there is such a risk of a traveler, using ordinary care in passing along a street, being thrown or falling into the dangerous way (adjoining the highway), that a railing is requisite to make the place safe and convenient. Hence a municipal corporation, charged with building and repairing roads, is guilty of negligence in constructing a passage-way by the side of a hill without sufficient guards to protect travelers." And Dillon on Municipal Corpora-

tions (§ 1004), states, viz. : " Want of a railing when necessary is an actionable defect."

In *Robinson* v. *Chamberlain* (34 N. Y., 389), PECKHAM, J., said : "A failure to keep a public highway in repair by those who have assumed that duty from the State, so that it is unsafe to travel over, is a public nuisance, making the party bound to repair liable to indictment for the nuisance, and to an action at the suit of any one who has sustained special damage. There is no decision in our courts at war with these principles." (Citing *Lansing* т. *Smith*, 8 Cow., 151 ; *Smith* v. *Wright*, 24 Barb., 170 ; *Adsit* v. *Brady*, 4 Hill, 630.)

In *Weed* v. *Village of Ballston Spa* (76 N. Y., 332), the injury sustained by plaintiff was in consequence of a trench, extended from near the gutter several feet into the street. The finding was that the barrier was insufficient. By reason thereof plaintiff was injured and the defendant was held liable and chargeable with "negligence in not abating the nuisance, or so guarding the excavation as to prevent accident to persons using the streets." And it was further held that a person traveling upon a highway is, as a "general rule, justified in assuming that it is safe."

In *Morrell* v. *Peck et al.* (88 N. Y. ; 398), it appeared that the injuries were received because the bridge was, at the time of the accident, "without any guards or railing to protect passengers, and had been knowingly and negligently left so by defendants ; that plaintiff, who was walking in the traveled track of the highway, in the evening, encountering a loaded team on the bridge, stepped aside to allow it to pass, and in so doing, without negligence or fault on his part, fell over the unprotected side of the bridge and was injured." The verdict for the plaintiff was sustained.

In *Kennedy* v. *Mayor* (73 N. Y., 368) a horse was injured by reason of the absence of a string-piece, by backing off a dock, which the defendant was charged with the duty of keeping in repair; and the court observed, viz. : " The absence of the string-piece must, for the purpose of the action, be deemed to be proximate cause of the loss. * * * The city was charged with the duty of keeping the dock in a safe condition, and if in using it in the customary way, the plaintiff's horse, without his negligence, was lost, the city is liable, although the horse was not, at the moment, obedient to the will of the owner."

In *Palmer* v. *Inhabitants of Andover* (2 Cush, 600) it was held that a liability attached for an injury " alleged to have been caused by a defect in a highway occasioned by the want of a rail or barrier, * * * if such rail or barrier were necessary for the proper security of travelers and would have prevented happening of the injury complained of." The court remarked, in delivering the opinion in the case, viz. : " To guard against damage by such accidents the law requires suitable railings and barriers, a proper width to the road, and whatever may be reasonably required for the safety of the traveler."

The same doctrine was asserted in *Hayden* v. *Inhabitants of Attleborough* (7 Gray, 338). A like doctrine was held in *Collins* v. *Dorchester* (6 Cush., 396). The absence of a railing which would have prevented an accident was held to be sufficient ground for a liability on the part of the town. (See, also, *Norris* v. *Litchfield*, 35 N. H., 271 ; *Wiley* v. *Portsmouth*, Id., 304 ; *Davis* v. *Hill*, 41 id., 329 ; *Joliet* v. *Verley*, 35 Ill., 58 ; *Houfe* v. *Town of Fulton*, 29 Wis., 296 ; S. C., 9 Am. Rep., 568 ; *Hey* v. *Philadelphia*, 81 Penn., 41.)

In *Jewhurst* v. *City of Syracuse* (108 N. Y., 303) it was held that " where there is no visible boundary to the line of a street, and a portion af the roadway traveled on is so near the line, although really outside of the street, as to induce the belief in any one passing upon the street and exercising reasonable care that he is within the line thereof, if such portion is for any reason rendered dangerous for travel, and the city has notice thereof, and such danger can be remedied by the exercise of reasonable care, either by the erection of a guard or railing along the line of the street, or in some other way, and the city neglects to do this, it is liable to one injured because of such defect while traveling upon such portion of the roadway, if he himself is free from any contributory negligence."

We are of the opinion that the learned trial judge, in committing the case to the jury, kept within the principles laid down in cases to which we have referred ; but it is insisted by the learned counsel for the appellant that if the commissioners of highways omitted to erect a barrier or guard along the wall where the plaintiff received the injury, that such omission was " of a judicial character and could not be redressed in an action for damages," and in support of his

argument in that aspect of the case he calls our attention to *Urquhart* v. *City of Ogdensburgh* (91 N. Y., 67). That was a case where power was conferred upon a municipal corporation to make local improvements, and it was held that the exercise of the power was "*quasi* judicial or discretionary, and for a failure to act on an erroneous estimate of the public needs a civil action cannot be maintained against it; and that where the injury was alleged to have been occasioned by an alleged defect in the plan upon which the sidewalk was constructed, in that the slope was too great, furnished no foundation for a recovery."

That case was again before the court, in 97 New York, 238, and it was there held that "where a change in the grade or slope has been made by the owner of adjoining premises in rebuilding, making the sidewalk dangerous for travel, an omission on the part of the corporation, after notice, to take any action in reference to the matter, is not a defense in an action brought against it to recover damages for injuries caused by the defect." We think that case does not stand in the way of the plaintiff's right of recovery.

The defendant's counsel also urges upon our attention the case of *Monk* v. *Town of New Utrecht* (104 N. Y., 552). That was a case where Eighty-sixth street was laid out under special statutes by commissioners appointed in virtue thereof. (Laws of 1869, chap. 670; Laws of 1873, chap. 364.) The street was laid out with a road-bed sixty feet wide, planked on either side by sidewalks eleven feet wide, raised about a foot above the level of the road, bordered near the gutter with a row of trees. It was there held that the omission to erect a railing or a fence at the top of the bank was a defect incident to the plan of the road, and the learned chief judge, in delivering the opinion, says, viz: "The town had furnished a safe and sufficient roadway of usual width, whose boundaries were indicated on either side by a gutter and elevated sidewalk, bordered by rows of trees, and was under no obligation to erect barriers to prevent travelers from wandering into the adjoining fields. No possible difficulty existed in this case to prevent a traveler from following either the road or sidewalk by marks which could both be seen and felt; and it would be imposing a burden beyond all precedent to require a town to remove irregularities in the sur-

face of the land, outside of the road, for fear that some traveler might wander there and thus sustain injury."

We think that case is clearly distinguishable from the one before us. There, in addition to what we have already said in respect to it, it appeared very clearly that the plaintiff had been "drinking heavily," and was guilty of contributory negligence. Nor do we see anything in *Hubbell* v. *City of Yonkers* (104 N. Y., 434) which aids the appellant. In that case the accident was one of "a class so rare, unexpected and unforeseen, defendant could not be charged with negligence for a failure to guard against it." And the opinion delivered in that case recognizes the authority of *Kennedy* v. *Mayor* (73 N. Y., 365), and *Macauley* v. *Mayor* (67 id., 602). And the learned judge who delivered the opinion, after referring to several cases cited to establish the duty of a town or city to guard the edge of a road passing along a precipice, observes, viz.: "Those are cases where the roadway itself runs along such a place, and danger, from the want of a railing, was naturally to be apprehended; while here the roadway was perfectly safe, in first-class condition, bounded by a gutter or curb-stone eight inches high, and ten feet of sidewalk, and where no danger from the embankment was possible until the horse should leave the road, drag his wagon over this curb-stone and sidewalk, and then fall over the exposed place. * * * The same reasons prevail as to railings on a bridge, for their absence would strike everyone as a plain, if not criminal, neglect of even ordinary care." And it was concluded in that case that the injury resulted from a cause too remote, and that considering the facts in that case, that the exposed places or dangerous places were not such that a failure to guard them with railings could fairly be called negligence.

It was insisted by the defendant that, because no injury had resulted from the roads being substantially in the same condition for sixty-eight years, that the "commissioners and the defendant are exonerated from any negligence in continuing the highway in its then condition."

We think the trial judge properly passed upon that question when he determined to submit the question to the jury with the instruction that that circumstance should be considered by the jury, and that he was warranted in the position announced, that he would

"leave it for the jury to say how valuable the evidence is in this case, and to give it such weight as they deem proper."

We are of the opinion that no error was committed by the judge in refusing to charge the jury, "that a failure to erect guards or barriers does not constitute negligence on the part of the defendant," and that his position that he would "leave it for the jury to say whether it does or not," was correct. Since the passage of chapter 700 of the Laws of 1881, imposing a liability upon towns "for all damages to person or property by reason of defective highways or bridges in such town in cases in which the commissioner or commissioners of highways of said towns are now by law liable therefor, instead of such commissioner or commissioners of highways," actions may be maintained against the town if the evidence would warrant the recovery against the commissioners of highways, but for the passage of the statute.

In *Bidwell* v. *Town of Murray* (40 Hun, 192), the court, in speaking of the duties of commissioners of highways of the town to use ordinary care to keep the bridges in the town in suitable repair for the purpose of the public travel over them, and declaring that a failure gives a right of recovery to persons suffering damages occasioned by such neglect, the court adds, viz.: "This is an active duty of the commissioners, in so far that they are required to use reasonable diligence to ascertain the situation of the bridges and highways of their respective towns; and although they do not have actual notice of defective condition, they may be chargeable with notice of the defects which would have come to their observation by the use of reasonable diligence."

We are of the opinion that the verdict before us establishes that the commissioners of highways of the town of Champion had not discharged their duty in the premises. Therefore, the town of Champion, by reason of the negligence of the commissioners, was liable to the plaintiff for the injuries which he sustained.

The judgment and order should be affirmed, with costs.

FOLLETT and MARTIN, JJ., concurred.

Judgment and order affirmed, with costs.