FAY *v.* TOWN OF LINDLEY.

(*Supreme Court, General Term, Fifth Department.*   October 23, 1890.)

HIGHWAYS—DEFECTS—LIABILITY OF TOWNS.

In an action for injuries caused by a defective highway, it appeared that, at the place of the accident, the road was built by excavation in a hillside, was about 10 feet wide, and was protected on the lower side by fenders. At the foot of the hill, below the road, was a creek. The year before the accident, the fenders had been carried away in places by a flood. The ditch on the upper side of the road had become filled with rubbish, and, a thaw having occurred shortly before the accident, water flowed over the road, and froze, so that the road-bed was slippery. While plaintiff was driving along the road, his wagon slipped off the road at a place where the fenders had been carried away, and fell into the creek. There was nothing to indicate the dangerous condition of the road, until plaintiff had reached a point where he could not turn around. Plaintiff had traveled the road two years before, and found it in good condition, and did not know its condition at the time in question. The highway commissioner inspected the road both in the summer and in the fall before the accident, and found that in places were no fenders, but he caused no repairs to be made, though he had sufficient funds in his hands. *Held,* that the town was liable, under Laws N. Y. 1881, c. 700, making towns liable for any damages to person or property by reason of defective highways or bridges in such town, in cases in which the commissioner of highways of said towns is now, by law, liable therefor, instead of such commissioner.

Appeal from circuit court, Steuben county.

Action by Edward Fay against the town of Lindley for injuries caused by a defective highway. Judgment was entered on a verdict for plaintiff, and defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*A. S. Kendall,* for appellant.   *D. M. Darrin,* for respondent.

CORLETT, J. On the 14th day of March, 1887, the plaintiff resided in Tuscarora, in the town of Lindley, Steuben county. On that day, with two teams loaded with hay, the plaintiff driving one and his brother following, he was proceeding to Painted Post for the purpose of marketing his loads. The plaintiff's brother, Charles Fay, drove the last team. At that time, and before and afterwards, Marcus Stowell was supervisor of the town of Lindley, John Starner was highway commissioner, and R. B. Hill pathmaster. A portion of the highway on which the plaintiff and his brother with their teams had need to travel to reach their destination was built by excavations in the rocks on the south side of Clendenning creek, which runs through a narrow rocky defile in the mountains. The road-bed was built on the south side of the creek extending 269 yards, was from 8 to 10 feet in width, and 4 or 5 feet above the water in the creek. At that time the west edge of the road-bed was protected on the creek side by logs and fenders for a distance of 147 rods. Then, for a distance of 87 yards, there were no fenders. After that there were 25 yards of fenders, and then for 10 yards there were no fenders. The road was originally protected by fenders its entire length. In January, 1886, a flood in the creek took away some of the fenders. In the winter season, ice and snow ordinarily accumulated in the road-bed, and it is liable to be icy, which was the case in the winter of 1886 and 1887. The rock on the side opposite the creek was shaly and high, and with a crow-bar could be easily broken. At the time in question, the ditch on the upper side of the road was filled with rubbish, and there was something of a slope in the direction of the creek from the side next the rocks. The road at the point in question was known as "The Narrows." The road had been frozen and icy most of the time during the winter, but shortly before the day in question a thaw occurred, and, the night before, the waters produced by the flood had frozen so that the road-bed was slippery and dangerous. The evidence tended to show that, at the point where the plaintiff entered the highway in the Narrows, there was nothing to indicate the dangerous condition of the road, and that, when a

point was reached disclosing the true situation, it was impossible for him to turn; that his wagon commenced slipping in the direction of the creek; and that, with the utmost efforts on his part, he failed to prevent its going over the creek, which inflicted some injury upon the wagon, and much upon the plaintiff. His brother was behind him. The same thing happened to his wagon, but with less injury. Other troubles of the same character happened to other people driving along the road about the same time. This road was called a dug-way or pass, and before January, 1886, fenders were maintained on its edge next the creek for the entire length. The supervisor of the town, in January, 1887, drove along this point, found it icy, and the man riding with him kept his foot out to prevent slewing off. The same evidence tended to show that proper repairs to make the road reasonably safe at the point where the accident occurred would cost from $5 to $12. The plaintiff had traveled this road two years before in the summer time, and found it in good condition. The evidence tended to show that, at the time in question, he supposed it to be all right. The evidence also tended to show that John Starner, the highway commissioner, in June, 1886, made an inspection of the Narrows, and found that there were places in which there were no fenders. He made a further inspection in November, 1886, when he found the same defects. He made no repairs, and caused no new fenders to be erected. He was re-elected commissioner in February, 1887, and had funds to commence the new term to the amount of about $50. He made no application at the town meeting for funds. The evidence also tended to show that, with a trifling amount of labor, the road between the mountain and creek could be so repaired that there would be no slope; also that there were no fenders at the place of the accident. The trial resulted in a verdict of $500 for the plaintiff. A motion for a new trial on the minutes was made and denied, judgment was entered, and the defendant appealed to this court.

To show negligence on the part of the commissioner, the plaintiff's contention on the trial was that the road should have been made level between the mountain and the creek; that the ditch on the mountain side should have been kept open; that fenders should have been constructed and kept up on the creek side; also that the commissioner had full knowledge of the defects which he obtained in his inspection in the summer of 1886, and in the fall of the same year; that he entirely neglected his duty in the above particulars; and that he had funds to make the repairs. The plaintiff also insisted that he had a right to travel upon the Narrows, and that, until it was too late to escape, he had no notice of danger. The defendant denied all the plaintiff's claims, and insisted that he was guilty of negligence; that the danger was the result of a sudden thaw; and that, with reasonable prudence on his part, no accident would have happened. The commissioner also claimed that the Narrows and their dangers were apparent, and that, under the circumstances, the plaintiff should not have ventured to travel the highway at that time. There was no controversy as to the place in question being a public highway. The jury found the controverted questions in favor of the plaintiff. The evidence warranted such finding. Towns were not liable for accidents on the highway until the passage of chapter 700 of the Laws of 1881, by which it was enacted that towns should be liable for all damages to person or property by reason of defective highways or bridges in such town, in cases in which the commissioner of highways of said towns is now by law liable therefor, instead of such commissioner of highways. This action was brought against the town, and the plaintiff's right to recover depends upon the liability of the commissioner, except for the above act. The general rule is that dangerous places in a highway should be protected by fenders, guards, or barriers. *Maxim* v. *Town of Champion*, 4 N. Y. Supp. 515; *Ivory* v. *Town of Deer Park*, 22 N. E. Rep. 1080; *Jewhurst* v. *City of Syracuse*, 108 N. Y. 303, 15 N. E. Rep. 409; *Kennedy* v. *Mayor*, 73 N. Y. 365; *Far-*

man v. *Town of Ellington,* 46 Hun, 41; *Rhines* v. *Town of Royalton,* Id. 676; *Warren* v. *Clement,* 24 Hun, 472. The law requires that the commissioner· of highways should exercise active oversight and diligence to ascertain the condition of the road. *Farman* v. *Town of Ellington,* 46 Hun, 41. He is also liable for not enforcing his authority over the overseer. See case last cited. The question of contributory negligence was one of fact. *Pomfrey* v. *Village of Saratoga Springs,* 104 N. Y. 459, 11 N. E. Rep. 43; *Remer* v. *Railroad Co.,* 1 N. Y. Supp. 124; *Nash* v. *Railroad Co.,* 4 N. Y. Supp. 525. Ordinarily a traveler has a right to assume, in the absence of visible obstructions, that the highway is safe. *Bidwell* v. *Town of Murray,* 40 Hun, 195; *Weed* v. *Ballston Spa,* 76 N. Y. 329; *McGuire* v. *Spence,* 91 N. Y. 303. The charge of the trial justice properly submitted the case to the jury, and none of the exceptions were well taken. The judgment and order must be affirmed. All concur.