### HOLCOMB *v.* TOWN OF CHAMPION.

(*Supreme Court, General Term, Fourth Department.* February, 1891.)

1. HIGHWAYS—DEFECTS—NEGLIGENCE OF COMMISSIONERS.

     In an action against a town for injuries caused by plaintiff's horse shying, and throwing plaintiff from her buggy down an embankment about 10 feet high, the question whether the highway commissioners were negligent in not protecting the embankment by a barrier was properly submitted to the jury.

2. SAME—INSTRUCTIONS.

     A witness for defendant testified that plaintiff's husband had "told her lots of times that the horse was not safe for her to drive." Plaintiff's husband testified that he had never told plaintiff "not to drive the horse, stating that he was not safe for her to drive." *Held*, that the court properly refused to charge that, if the jury believed defendant's witness, they were "at liberty to find that the horse was unsafe for plaintiff to drive, and that she knew it," stating in his refusal that whether or no the horse was safe for plaintiff to drive was a question of fact for the jury.

Action by Jennie J. Holcomb against the town of Champion. Plaintiff received injuries on the 27th day of June, 1887, while driving a horse and

wagon with her two daughters, one 14 and the other 9, from her home towards her brother's residence. She came to a gulf or ravine about a half a mile from the village of Champion. Deer Lick creek runs through the gulf. There is an embankment raised some distance above retaining walls, and the traveled track was about 12 feet in width, and gradually sloped off to the retaining walls. The distance from the top of the walls down to the adjacent ground was some 10 feet. Plaintiff, when she came in sight of the embankment where the injuries occurred, had the reins in her hand, and the horse turned suddenly to the right tipping over the buggy, and the occupants were precipitated, and plaintiff received the injuries of which she complains. The facts and circumstances attending the accident are detailed by the plaintiff and her daughter Julia. Some stone had been left by the highway commissioners, and apparently the horse, discovering them, pricked up his ears and quickened his motion, and "sheered right out of the road." Julia testifies, viz.: "After the horse commenced to move to the right he didn't move ahead any at the same time. He turned right straight off. He turned right straight to the right, short off; jumped right off. It was done suddenly. He jumped towards the side I was sitting on." Considerable evidence was given on the trial as to whether the horse was blind or not, and as to his character and disposition. Some of the testimony given upon the trial has been omitted from the evidence, "for the reason that the appellant stipulates that all grounds for a reversal of a judgment and order are waived, excepting (1) whether the negligence of the defendant proven caused the injury; (2) whether the plaintiff herself was guilty of contributory negligence; (3) whether the court improperly refused to instruct the jury concerning the testimony of Henry Ingraham." It was "conceded by the appellant that the court properly submitted to the jury the question whether the highway was in an unsafe and dangerous condition for public travel at the place where the accident occured, and that the court also properly submitted to the jury the question whether the commissioners of highways of the defendant negligently allowed the highway to remain in an unsafe and dangerous condition for public travel; and it being further conceded by the appellant that the finding of the jury adverse to the defendant upon these two questions is conclusive upon the appeal." That it was "conceded by the appellant that the court properly submitted to the jury to determine the extent of her injuries, and that the finding of the jury upon this branch of the case, and the amount of damages awarded the respondent, if it is legally liable therefor, is conclusive upon this appeal." From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals.

Argued before HARDIN, P. J., and MARTIN, and MERWIN, JJ.

*Mullin & Griffin*, for appellant.   *Porter & Walts*, for respondent.

HARDIN, P. J.   When the trial judge delivered his charge to the jury he stated, viz.: "A recovery is to be had here, if at all, not by reason of the negligence of the town, but by reason of the negligence of the commissioners of highways with reference to the road; so that there is to be a finding on your part, in order to enable the plaintiff here to recover, in the first place, that the commissioners of highways in the town of Champion were guilty of negligence in not keeping this highway in a reasonably safe condition for public travel, which negligence caused this accident and these injuries.   *   *   * If you find they were negligent, and that negligence caused the injuries, then the plaintiff may recover for those injuries against the town, unless the plaintiff was herself guilty of some negligence which contributed to produce the injuries." Later on in the course of the charge the judge observed: "The single thing which the court permits you in this case to determine was negligence, if anything was negligence, was the failure to have on either side of

this embankment, on either side of the road, a guard or fence or rail, so that, if horses should become partially unmanageable and shy, they would be—travelers would be—protected from going off the embankment by the railing or fence. You may not charge the commissioners with negligence for anything else in this case, if you do for that, except the failure to have some guard or rail or fence on either side of this embankment." We think the evidence warranted the charge given in the language which we have quoted. Our views upon these questions were expressed in *Maxim* v. *Town of Champion*, 4 N. Y. Supp. 515; affirmed 119 N. Y. 626, 23 N. E. Rep. 1144. The damages sustained by the plaintiff in the case just cited arose "from walking off from a high unguarded bridge or embankment in one of the public highways of the defendant," and being the same highway upon which the plaintiff in this case was injured. We think the learned counsel for the appellant were warranted in stating in their points that, "in view of the decisions upon this subject, it undoubtedly may be assumed the court properly submitted to the jury to decide whether such omission, under the circumstances, constituted actionable negligence; and it may be assumed also that the finding of the jury adversely to the defendant upon this branch of the case will not be disturbed on the appeal." We think it was a question of fact on all the evidence for the jury to determine whether or no the negligence of the highway commissioners, to which we have referred, was the proximate cause of the injuries received by the plaintiff. In *Kennedy* v. *Mayor*, 73 N. Y. 367, it seems to be laid down that the duty of protecting animals by a guard or barrier is not restricted alone "to animals which at the time of their loss are docile and obedient, and under absolute control of the owner." In the opinion it is said: "The shying of a horse, his backing or turning, in consequence of a sudden fright or other cause, so as to be for a moment beyond the control of the one having him in charge, are among the most common occurrences. That a horse may on a particular occasion do this neither shows that the animal is vicious or generally unsafe or that the owner is careless. It is against accidents which may happen from these common incidents in the use of horses upon docks that a barrier is especially needed." We suppose no less stringent rule or reasonable requirement obtains in respect to highways.

2. Whether the plaintiff was free from contributory negligence or not was a question of fact for the jury. Her testimony and the testimony of her daughter Julia bearing upon that question fairly presented a question for the jury to determine; and that question was carefully, cautiously submitted by the trial judge to the jury, and we see no occasion to disturb their verdict upon that question.

3. When Henry Ingraham was upon the stand he gave evidence tending to show that the husband of the plaintiff had "told her lots of times that the horse was not safe for her to drive." Later on, the husband of the plaintiff was called as a witness, and testified that he never told his wife "not to drive the horse, stating that he was not safe for her to drive." The counsel for the defendant requested the court to charge the jury that they were "at liberty to find the horse was unsafe for the plaintiff to drive, and that she knew it," if the jury believed the evidence of the witness Ingraham as to the interview detailed by him. To that request the judge observed in his refusal that it was for the jury to determine, as a question of fact, whether or no the horse was unsafe for the plaintiff to drive, and that she knew it. We think the exception taken to the position assumed by the judge in that aspect of the case presents no error. The practice of seizing upon detached portions of evidence which are the subject of contradiction, and requiring the trial judge to charge conditionally in respect thereto, that, if a certain portion of the evidence thus brought into dispute is believed by the jury then that the verdict should be in accordance therewith, is not to be commended. In this case the trial judge had very fairly and fully called the attention of the jury to the leading ques-

tions of fact involved in the case, and we think he was not called upon to yield to a request which required him to make fractional representations. Having discovered no error in the course of the trial, we must allow the verdict to stand. Judgment and order affirmed, with costs. All concur.